UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Respondent,<br><br>v.<br><br>LUTHER GENE RAY,<br><br>                              Movant. | Case No.:  15CR498-BEN<br><br>**ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE** |

## I.     BACKGROUND

Movant Luther Gene Ray has filed a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255.  Having reviewed the motion, the Court finds that no hearing is necessary, the motion is denied, and a certificate of appealability is denied.

In 2004, Ray harbored two minors and through force and fear managed the minors as prostitutes to perform sex acts in exchange for money that they would turn over to Ray.  He was charged in the United States District Court for the Central District of California with violating 18 U.S.C. § 1591(a)(1) in Case No. CR 04-1589(B)-ER.  He pleaded guilty and was sentenced to 100 months in prison.  One month after being released from prison, in the summer of 2014, Ray again harbored a minor, 16-year-old K.S., and managed the minor as a prostitute.  Ray was again charged with violating 18

U.S.C. § 1591(a)(1) and 18 U.S.C. § 2260A for failing to register as a sex offender.  After a four-day trial in December 2015 a jury returned a guilty verdict on both counts.

On February 22, 2017, Ray was sentenced to 360 months for sex trafficking of children or by force, threats of force, or coercion and 10 years consecutive for failing to register as a sex offender, for a total of 40 years in prison.  Ray appealed.  On November 6, 2018, the Ninth Circuit Court of Appeals affirmed the convictions and sentence.  On August 22, 2019, Ray timely filed a motion under § 2255 alleging a variety of claims primarily focusing on ineffective assistance of counsel.  The Government filed a response opposing the motion along with a declaration from Ray's trial counsel.  Ray asked for an extension of time to file a traverse (or reply), which was granted on March 1, 2021.  However, Ray has not filed a traverse.

## II.    LEGAL PRINCIPLES

A motion to attack a conviction and sentence under § 2255 is a federal prisoner's substitute for a petition for a writ of habeas corpus.  Josephine R. Potuto, *The Federal Prisoner Collateral Attack: Requiescat in Pace*, 1988 B.Y.U. L. Rev. 37, 37 (1988).  Under § 2255, a movant is entitled to relief if the conviction and sentence: (1) was imposed in violation of the Constitution or the laws of the United States; (2) was given by a court without jurisdiction to do so; (3) was in excess of the maximum sentence authorized by law; or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; *United States v. Speelman*, 431 F.3d 1226, 1230 n.2 (9th Cir. 2005).

If it is clear the movant has failed to state a claim, or has "no more than conclusory allegations, unsupported by facts and refuted by the record," a district court may deny a § 2255 motion without an evidentiary hearing.  *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (providing that "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing").  Courts deny a hearing where "the petitioner's allegations, viewed against the record, fail to state a claim for relief."  *United States v. McMullen*, 98 F.3d 1155, 1158-59 (9th Cir. 1996).

Ray seeks to set aside his sentence mainly on the grounds that his attorneys rendered ineffective assistance.  A criminal defendant is entitled to the effective assistance of counsel at all stages of a criminal proceeding.  Although he is entitled to an effective defense he is not entitled to a perfect defense, and attorney errors that have no significant effect or are not reasonably likely to have changed the outcome are not a basis for § 2255 relief.

In order to sustain a claim of ineffective assistance of counsel, the movant has the burden of showing both: (1) that his defense counsel's performance was deficient; and, (2) that this deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 690-92 (1984).  "Failure to satisfy either prong of the Strickland test obviates the need to consider the other."  *Redmond v. United States*, No. 21-55142, 2022 U.S. App. LEXIS 14293, at *3 (9th Cir. May 25, 2022) (quoting *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002)).  To satisfy the first prong, the petitioner must show that his counsel's advice was not "within the range of competence demanded of attorneys in criminal cases."  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).  In considering this issue, there is a "strong presumption that counsel's conduct falls within a wide range of acceptable professional assistance."  *Strickland*, 466 U.S., at 689.  Moreover, post hoc complaints about the strategy or tactics employed by defense counsel, or complaints that defense counsel did not conduct a sufficiently vigorous pretrial investigation, are typically found to be insufficient to satisfy the first prong of *Strickland*.  *See, e.g., United States v. Simmons*, 923 F.2d 934, 956 (2d Cir. 1991) (appellant's displeasure with strategy employed by trial counsel insufficient to establish ineffectiveness).

To satisfy the second prong, a movant must show that he was prejudiced by the deficient representation he received.  The focus of the prejudice analysis is on whether the result of the proceeding was fundamentally unfair or unreliable because of counsel's ineffectiveness.  *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).  Proving that a deficient performance caused prejudice requires more than showing that the errors had some conceivable effect on the outcome of the proceeding.  *Strickland*, 466 U.S., at 693.  "An

error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. The test for ineffective assistance of counsel is whether the assistance of Ray's attorneys fell below the constitutional standard for effective assistance, and if so, whether it is reasonably likely that the ineffective assistance changed the outcome of the case. *Lockhart*, 506 U.S., at 373-75 (O'Connor, J., concurring) ("The determinative question [is] whether there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'").   A defendant's mere conclusory allegations that counsel failed to provide effective assistance do not satisfy the highly demanding standard of deficient performance and resulting prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 381-82 (1986).

"When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition." *United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000).  When a criminal defendant could have raised a claim on direct appeal but did not, it is a procedural default.  *Bousley v. United States*, 523 U.S. 614, 622 (1998).  Usually, to overcome a procedural default and raise the issue under § 2255, a movant must demonstrate: (1) sufficient cause for the default; and (2) prejudice resulting from it.  *See Bousley*, 523 U.S., at 622.  The ineffective assistance of counsel claim is an exception to the procedural default rule, because the trial record is often inadequate.  *Massaro v. United States*, 538 U.S. 500, 504 (2003) ("We hold that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").

### III.   DISCUSSION

Ray claims the attorneys appointed to represent him rendered ineffective assistance of counsel (IAC).  He also brings a new constitutional challenge of supervised release provision 18 U.S.C. §3583(k).  Ray's motion identifies eight claims.  Some of the numbered claims actually put forth several separate claims which are found in his

4

supporting memorandum and attached declaration.  A liberal construction of his papers reveals at least thirteen claims for relief.  To the motion and memorandum, Ray attaches his declaration, two exhibits in the form of photocopies of letters he says he sent to his counsel (but which his counsel says were never received), and a request for an attorney to be appointed to represent him.

In ruling on Ray's claims, a district court may summarily dismiss a § 2255 motion if the allegations in the motion when viewed against the record do not give rise to a claim for relief or are "palpably incredible or patently frivolous." *United States v. Withers*, 638 F.3d 1055, 1063 (9th Cir. 2011).

## A.  The Claims of Ineffective Assistance of Counsel

The Court presided over the pre-trial, trial, and sentencing in this case.  Prior to this case Ray had a lengthy criminal record.  In addition to several state crimes, Ray had been previously convicted of the same federal crime in another district.  He pleaded guilty in that case and was sentenced to 100 months in custody.  Within a month of his release from federal custody, Ray returned to his previous criminal activity.  This time, however, Ray could not claim ignorance about the illegality of his actions.  Moreover, he faced a prosecutor known for her toughness and competence.  Should he be convicted, Ray was facing a minimum 15-year sentence with a higher criminal history score for purposes of the Sentencing Guidelines, and a mandatory 10-year consecutive sentence for violating the registration provisions of SORNA.

The prosecutor would eventually recommend Ray be sentenced to life in prison on Count 1 and a mandatory 10-year sentence *consecutive to life* on Count 2.  His Sentencing Guidelines range was off the high end of the chart.  If he pleaded guilty, his minimum mandatory sentence would be much longer than the 100 months he received the last time he was in federal court.

Ray was not likely to receive a light plea bargain from this prosecutor.  On the other hand, if he went to trial, he had a longshot chance of walking away.  If he lost, the punishment might not be that much worse than the Guideline sentence.  The one good

thing Ray had going for him in the fall of 2015 was that he had a court-appointed, extremely competent, trial attorney that would put the prosecutor's case and her skills to the test.  Unaware of his good fortune in that regard, however, Ray asked for his first trial counsel to be replaced after counsel mis-calendared a perfunctory hearing – a hearing which the Court had re-scheduled *sua sponte*.  But Ray's luck had not yet run out.  His first trial counsel was replaced with yet another very experienced, competent trial counsel.  The Court had a long history and experience with both of Ray's counsel.  After the trial, Ray would again ask for, and have appointed, a third replacement attorney for sentencing.  Against this backdrop, it is not particularly surprising that Ray would say in hindsight that he really had wanted to accept a plea offer rather than go to trial.  But because he was forced to go to trial, he now says he wanted to testify in his own defense, confident the jury would have believed his story and found him not guilty.

What actually happened was that the only plea bargain offers came with very long sentences.  And the only alternative was going to trial against a tough prosecutor who would have inflicted a barrage of heavy blows during cross-examination, if Ray took that stand.  Ray decided to do what many defendants do when faced with a similar choice: he exercised his constitutional right to not testify and his constitutional right to trial by jury, with the dim hope of a longshot defense verdict.

### i.    Claim 1

Ray's first claim is that he was left without the assistance of counsel at a critical stage of the proceedings and that such an event constitutes structural error.[1]  Ray is correct that it would be structural error (with no need for a defendant to show prejudice) *if* it were the case that he was not represented by counsel at a critical stage of the

---

[1] This is a claim that could have been brought on direct appeal because the issue is clear from the record.  While it is a procedurally defaulted claim, an ineffective assistance of counsel claim is an exception to the default rule, the claim may also be brought under § 2255.  *Massaro*, 538 U.S., at 504.

proceedings. *See United States v. Cronic*, 466 U.S. 648 (1984). His claim is strong on the law, but weak on the facts. Ray identifies a pre-trial motion hearing on the afternoon of August 10, 2015. His counsel, Timothy Scott, Esq., mis-calendared the date and failed to appear. There is no question that Ray was not represented in court by his attorney on that afternoon. In fact, this event led to Ray asking for different counsel and Knut Johnson, Esq., being appointed to replace Scott. *See* Status Hearing of Sept. 17, 2015, Transcript, Dkt. 183, at p. 11-19. The pertinent question for Ray's § 2255 motion is whether the proceeding on August 10, 2015, may be considered a critical stage.

The Ninth Circuit has identified three factors which the Supreme Court has found useful in determining whether an event constitutes a critical stage of the prosecution: (1) if failure to pursue strategies or remedies results in a loss of significant rights, then Sixth Amendment protections attach; (2) where skilled counsel would be useful in helping the accused understand the legal confrontation, a critical stage exists; and (3) if the proceeding tests the merits of the accused's case. *United States v. Bohn*, 890 F.2d 1079, 1080-81 (9th Cir. 1989) (quoting *Menefield v. Borg*, 881 F.2d 696, 698-99 (9th Cir. 1989)). Applying these factors, it is clear that the proceeding on August 10, 2015, was not a critical stage of the criminal proceeding.

Scott filed an extensive, well-written motion for Ray on June 15, 2015. (Dkt. 41.) The motion challenged the constitutionality of the criminal charging statute and sought to suppress evidence. On July 5, 2015, Scott filed supplemental briefing. The motion's arguments were based on questions of law. No testimony was needed. The Court set a hearing date for July 30, 2015, with the expectation of delivering a written ruling on the defense motions. On July 29, 2015, on the Court's own motion, the hearing date was re-set for August 10, 2015.

On August 10, 2015, the Court had prepared a written order denying the motion. The order was signed that day. (Dkt. 62.) Ray refers to the proceeding on that afternoon as an "evidentiary hearing." However, the transcript of the proceeding on August 10, 2015, reflects that no evidence was presented, no issues were discussed, and no oral

7

1   argument was heard.  Hearing Transcript, Dkt. 111.  When it appeared that Ray's counsel

2   was absent, this Court made limited perfunctory comments about the calendaring of the

3   date and announced that an order on the motion had been prepared and was being signed.

4   The salient part of the three-minute calendar follows:

5        *THE COURT:  All right.  All right.  So it appears that Mr. Ray is present.*

6        *Mr. Ray, I'm not sure how this matter wound up on calendar.  I think it was*

7   *supposed to be on calendar last week, but I was out of town last week, and so I continued*

8   *the matter to this week.  It doesn't really matter.  It appears that Mr. Scott, for whatever*

9   *reason, is not able to be here today.  He is your attorney. My recollection is that we had*

10  *set the matter for a hearing.  I had indicated to the parties that I would be issuing an*

11  *order or hopefully issuing an order on a motion to dismiss and to suppress that had been*

12  *filed by Mr. Scott.  I have actually a written order that is prepared that I will file*

13  *immediately.  That order essentially denies the motion to dismiss and the motion to*

14  *suppress.  So that's what we've got going today.*

15       *......*

16       *THE COURT: Okay.  All right.  Great.  Good.  All right.  So anyway, I've signed*

17  *the order denying the motion to dismiss and the motion to suppress.*

18       *.....*

19       *MS. SERANO (Assistant U.S. Attorney): So we just -- we don't have a pending date*

20  *for this?  We just have our in lims and trial date?*

21       *THE COURT: Yes, that's correct.*

22       *MS. SERANO: Okay.  Great.*

23       *THE COURT: All right.  Thank you.*

24  Proceedings began at 2:55 p.m. and adjourned at 2:58 p.m.  The transcript also contains a

25  few other sentences about unimportant subjects and waiting time punctuated by small

26  talk.

27       An actual evidentiary hearing might qualify as a critical stage of the proceedings.

28  In the circumstance of this case, however, to call the proceeding an evidentiary hearing is

not a slight misnomer.  As mentioned previously, no evidence was introduced, and no testimony was offered.  There were no witnesses present and no documents were offered in evidence.  Oral argument was not entertained because the arguments were set out fully in the filed briefs.  This Court had already reached its decision on the motion and was prepared to announce its written ruling.

Applying the *Bohn* factors, it is clear that the August 10, 2015, hearing, at which Ray was unrepresented, was not a critical stage of the proceedings.  As to the first factor, there was no failure to pursue strategies or remedies and there was no resulting loss of significant rights.  That had already been done in written briefing.  For the second factor, skilled counsel would not have been useful in helping the accused understand the legal confrontation because there was no confrontation.  There was an announcement that a written decision had been made and would be docketed later.  No doubt later on, after he had an opportunity to read and study the decision, Ray's counsel did help Ray to understand the ruling.  The third factor asks whether the proceeding tests the merits of the accused's case.  Clearly, unlike a trial or a motion for a judgment notwithstanding the verdict, no merits testing took place on August 10, 2015.  Ray does not cite a decision where counsel was considered ineffective at a critical stage of proceedings when absent during a three-minute *pro forma* hearing.  A search of federal caselaw does not reveal a similar event being treated as a critical stage of a criminal proceeding.  In sum, Ray's claim when viewed against the record does not give rise to a claim for relief.  *Withers*, 638 F.3d at 1063.

### ii.    *Claim 2*

The second claim sets forth several individual claims about pre-trial proceedings. Each is considered in order.  Ray first alleges his replacement counsel failed to advise him to accept a 25-year plea deal.  Ray says that had he been told about it, he would have accepted the plea bargain.  It would be ineffective assistance to fail to advise a client to enter a plea bargain when it is clearly in the client's best interest.  *United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir. 2003).

9

Having lost at trial, it is common for a defendant to claim that he would have accepted a plea agreement. Ray does so here. Ray writes about a "25 year plea deal," as if the government had offered a sentencing bargain under Federal Rule of Criminal Procedure 11(c)(1)(C). A plea agreement under Rule 11(c)(1)(C) binds the court to a specific sentence. *See Morgan v. United States District Court*, 506 F.3d 705, 708-09 (9th Cir. 2007). These types of plea agreements are not used in this district or in this Court. Instead, plea agreements in this district and this Court are of the type provided for in Rule 11(c)(1)(B) wherein the parties may agree to recommend a sentence, but the court is not bound to impose the recommended sentence. Far from it. The court would still calculate the Sentencing Guidelines range and use that range as a guide in considering the 18 U.S.C. § 3553(a) factors to determine an appropriate sentence.

Consequently, when Ray writes about a "25 year plea deal" it could not have meant a guaranteed 25-year sentence. There is no doubt that his attorney, with decades of practice in this district, explained all of this to Ray. In fact, Knut Johnson's file notes reflect exactly this discussion. Johnson declares that his notes from September 22, 2015, show that he did discuss with Ray a plea offer with a 15-year minimum mandatory sentence and a Sentencing Guideline range "close to 40 years." Contrary to Ray's current § 2255 claim, Johnson's notes from 2015 say that Ray did not agree to the offer. Johnson's 2015 notes also show that he discussed with Ray a second offer of a 30-year stipulated sentence -- which Ray rejected. Johnson's earliest notes from September 18, 2015, reflect that Ray said that he did not want to plead guilty. And Johnson's notes are consistent with the notes of Ray's prior attorney. Scott's notes from February 2015 say that Ray wanted to go to trial "because he has nothing to lose at this point." All of which makes sense. Today, Ray claims he would have accepted a 25-year deal and accuses his attorney of forcing him to reject the offer and go to trial.

Ray's own letter to counsel dated November 13, 2015 (Exhibit A to the Motion) indicates he wanted a shorter plea deal to avoid trial.[2]  Ray wrote to Johnson, "See if the prosecutor will be willing to give me 20 years, if so, I will take it right now.  I don't want to go to trial."  Apparently, there was no 20-year offer forthcoming.  That is not surprising.  Only two weeks before, on November 2, 2015, Ray had rejected a 30-year plea bargain.  But there is no evidence that there was offered, at any point, a plea bargain that would have capped his sentence at 25 years.  If he had pleaded guilty to the two counts in the indictment, the *minimum mandatory* sentence would have been 25 years with a Sentencing Guideline range approaching 40 years.  Instead, he went to trial, was convicted, and faced a Sentencing Guideline range of life, plus 10 years.  Ray's § 2255 claim of ineffective assistance of counsel is palpably incredible.  *Withers*, 638 F.3d at 1063.

Second, Ray claims that he was reluctant to go to trial, but Johnson convinced him there was no way he would be found guilty beyond a reasonable doubt.  He claims that the result of that bad advice was that he received a 40-year sentence after trial rather than a 25-year sentence based on a plea agreement.  The claim is belied by experience, evidence, and common sense.

Having listened to the witnesses at trial, it is clear that the evidence against Ray was strong.  That Johnson, with three decades of criminal defense experience, would advise Ray so poorly is unlikely.  It is more likely that any attorney, even one with no criminal defense experience, would have advised Ray that he was likely to be found guilty by a jury.  In his declaration, Johnson says that he actually did advise Ray that he would likely be convicted of all counts based upon the strength of the government's case.

---

[2]   Attorney Johnson doubts he ever received the two handwritten letters Ray attaches to his § 2255 motion.  Johnson says that these letters are not in his case files.  Johnson says that the letters would be in his case files if he had received them from Ray.

15CR498-BEN

That advice comports with what a skilled defense attorney would say.  It is probably the same kind of advice Johnson had given to clients many times before.

In the end, assuming arguendo that Johnson's advice was that Ray could expect a defense verdict, and it was bad advice, Ray still makes no showing of a likely different outcome or a lower sentence.  There is no demonstration of prejudice.  To sum up, Ray's ineffective assistance of counsel claim on this basis is without merit and palpably incredible.  *Withers*, 638 F.3d at 1063.

Ray's third argument about ineffective assistance of counsel as part of Claim 2 is that Johnson prepared an ineffective defense about the age of the minor victim: K.S.  Specifically, Ray says "Knut Johnson prepared an ineffective defense that Mr. Ray was unaware of the minor victim's age, when circumstantial evidence could easily persuade a jury otherwise."  Later, Ray makes another claim that he really wanted to take the witness stand and tell the jury about how he was unaware of K.S.' age.  *See* Claim 7, *infra*.  Testimony about not knowing that he was prostituting a minor might have made Ray sympathetic to the jury, or it might have fallen on deaf ears.  A defendant's lack of knowledge is one aspect necessary to a defense under § 1591.  But it is only one of three parts of a defense.  Unfortunately, Ray also would have had to prove he did not have a reasonable opportunity to observe the victim and conclude she was a minor.  That was an uphill battle.  Ray also had to prove that he did not use force, threats of force, or coercion.  Another high hurdle.  For a defense verdict, he needed all three -- a hat trick.

That the defense was not ultimately persuasive was not due to Johnson's ineffective assistance.  As Ray himself points out, the prosecution's evidence -- that he *did know* his victim was a minor -- was strong.  Yet, if Ray is to be believed, Ray wanted to pursue this line of defense at trial and believes that his own testimony would have been persuasive.  Ray's own declaration says that "I would have taken the stand and addressed the facts of me not knowing the minor victim's age."  Putting Ray on the stand would have been a risky trial strategy (as is discussed *infra*.).  The main problem with this

allegation of ineffective preparation is that Johnson had little to work with. This claim is therefore meritless on the record and patently frivolous. *Withers*, 638 F.3d at 1063.

Similar to the previous claim, Ray's fourth assertion says that Johnson was ineffective because he failed to investigate a viable defense and erroneously advised him that the government could not prove Ray had specific intent. Johnson says in his declaration that he never told Ray that Ray would win, and he never told Ray that the government would be unable to prove specific intent. The claim in this setting, for this charge, against this defendant, is implausible.

Beyond that, Ray says that Johnson failed to investigate but he does not identify an uninvestigated viable defense. He does not suggest that he had an alibi. He does not contest the fact that he was running an unlawful prostitution business. He does not say that K.S. was not prostituting for him. Ray has not identified any defense that Johnson failed to investigate, much less a viable defense. A bald assertion of the existence of an uninvestigated defense is insufficient to warrant an evidentiary hearing. Ray's claim that Johnson advised the government could not prove intent is palpably incredible. *Withers*, 638 F.3d at 1063.

Ray's fifth contention in Claim 2 is that his attorney for sentencing, Ricardo Gonzalez, Esq., was ineffective because he assured Ray that he would receive a 25-year sentence. The contention lacks merit. That Gonzalez would recommend a low-end 25-year sentence is not surprising given 25 years was the mandatory *minimum* sentence. That Gonzalez would assure Ray after a jury verdict that he would receive a sentence of *only* 25 years is palpably incredible. Gonzalez, too, is an experienced lawyer with many years of experience on the Court's CJA panel. In the Pre-Sentence Report, the Probation Officer calculated the maximum possible sentence as life, plus 10 years, and the Sentencing Guideline range was life on Count One and 10 years consecutive on Count Two. Gonzalez's sentencing summary chart recommended 25 years, but it acknowledged that the Guideline range was much longer. Gonzalez's sentencing memorandum also

15CR498-BEN

1    acknowledged the severe Guideline range but went to great lengths to justify a minimum

2    mandatory sentence.

3          In the end, regardless of the sentence Gonzalez might have predicted, it was out of

4    his hands.  Courts have found ineffective assistance only where counsel grossly

5    mischaracterized a likely sentence *and* where the defendant then relied on the prediction

6    *and* made an ill-advised decision to plead guilty.  *See United States v. Jackson*, No. CR

7    12-20-GF-SEH, 2014 U.S. Dist. LEXIS 62582, at *10 n.2 (D. Mont. May 5, 2014)

8    (collecting cases); *cf. Womack v. McDaniel*, 497 F.3d 998, 1003 (9th Cir. 2007) (advice

9    that pleading guilty is the best chance of receiving a 30 to 40-year sentence is not a gross

10   mischaracterization even though the actual sentence was eight life terms).  No cases have

11   found ineffective assistance where counsel mis-predicts the coming sentence after

12   conviction at trial.  This claim does not merit § 2255 relief.

13                  *iii.*    **Claim 3**

14         Ray claims that Johnson rendered ineffective assistance because he failed to inform

15   Ray of a life sentence enhancement possible under 18 U.S.C. § 3559.  The claim is of no

16   importance in this case because the government did not allege a § 3559(e) sentencing

17   enhancement in the indictment.  Assuming arguendo that Johnson did not advise Ray of

18   the possibility of a § 3559(e) enhancement, and that the omission fell to the level of

19   ineffective assistance, Ray can show no prejudice.  *See, e.g., Scales v. Chavez*, No. CV

20   07-0451-TUC-DCB (BPV), 2008 U.S. Dist. LEXIS 128451, at *4-5 (D. Ariz. July 30,

21   2008) ("[E]ven assuming counsel's performance to be unreasonable, it simply did not

22   prejudice Petitioner, as his sentence under 18 U.S.C. § 3559(c) was proper in all

23   respects.").  Ray has not argued prejudice.  Ray has not argued that it affected his

24   sentence.  Ray has not argued actual innocence.  *See, e.g., Smith v. Colbert*, No. CV 22-

25   00014-TUC-RM (EJM), 2022 U.S. Dist. LEXIS 25906, at *1-2 (D. Ariz. Feb. 11, 2022)

26   (§ 2255 movant claimed actual innocence of 18 U.S.C. § 3559(e)).  Both counsel's failure

27   and prejudice are necessary for § 2255 relief.  On this record, no hearing is warranted and

28   no relief is needed.

Under Claim 3, Ray also claims ineffective assistance of counsel where he contends that his attorney failed to investigate the penalties for registered sex offenders under 18 U.S.C. § 2260A. He does not support or develop this argument. He has not argued prejudice and he can show no prejudice. On this record, no hearing is warranted and no relief is warranted.

### iv.    Claim 4

Ray claims that 18 U.S.C. § 3583(k) is unconstitutional. He argues that § 3583(k) by imposing a statutory punishment for a future supervised release violation strips sentencing discretion from the sentencing judge. This claim is not based on ineffective assistance of counsel. It is not ripe for review and not cognizable. Ray has much of his 40-year sentence ahead of him still. This claim will not be ripe before he completes the custodial portion of his sentence, is on supervised release, and violates the terms of supervision by committing another enumerated sex offense. *See, e.g., United States v. Haymond*, 139 S. Ct. 2369, 2375 (2019) ("Because Mr. Haymond had committed an offense covered by §3583(k), the judge felt bound to impose an additional prison term of at least five years."). In the event Ray violates the conditions of his supervised release, he may challenge the constitutionality of § 3583(k) at that time.

### v.    Claim 5

Ray claims that his attorney was ineffective for failing to argue that the government's expert witness, Larry Thomas, was presented through prosecutorial misconduct. Thomas was an unusual witness. He testified as an expert on operating an unlawful prostitution business. He was indicted, pleaded guilty, and cooperated with the government with the hope of receiving a §5K1.1 lenient sentencing recommendation and a sentence below the minimum mandatory length. He testified about the methods used and language employed in the prostitution business to assist the jury in understanding the evidence about Ray's criminal operation. All of this was the subject of questioning both at a *Daubert* hearing before trial and at trial.

1    Ray's attorney, Johnson, made the strategic decision to forego questioning of

2  Thomas at the pre-trial *Daubert* hearing in the obvious hope of surprising Thomas with

3  tough cross-examination questions in front of the jury.  At trial, Johnson verbally

4  peppered Thomas with questions on the stand.  He questioned Thomas about his work

5  with the prosecutor on another case and about his cooperation with, and expectation of

6  help from, the government.  Ray claims now that Thomas sought him out in a holding

7  tank to relay information back to the prosecutor.  But Ray neither identifies anything he

8  said to Thomas or how it was ultimately used at trial.  In fact, at trial Thomas did mention

9  that he recognized Ray while both were in a holding tank.  But Thomas did not testify

10  about anything Ray said.  In fact, Thomas did not testify as a percipient witness.  There is

11  no evidence in the record and no evidence presented in the § 2255 motion to support

12  Ray's assertion.

13    Moreover, neither the record nor the motion supports Ray's contention that the

14  prosecutor acted improperly.  Ray contends that it was improper for the prosecutor to

15  hide from the jury that Thomas was granted immunity in exchange for his testimony.  But

16  Thomas was not granted immunity.  Ray contends that his attorney was ineffective for

17  failing to convey to the jury that Thomas was likely willing to lie on the stand because he

18  was afraid of a long prison sentence.  But Johnson conveyed that possibility to the jury

19  during his cross examination of Thomas on the first day of trial.

20    In short, Ray's contentions of ineffective assistance do not match the proceedings

21  in the *Daubert* hearing or at the trial, both of which are on the record.  On this record, no

22  hearing is warranted and no relief is needed.

23                *vi.*     **Claim 6**

24    Next, Ray claims that Johnson rendered ineffective assistance by not issuing

25  subpoenas to two witnesses.  He only identifies one witness.  In his declaration, Ray says

26  he wanted to subpoena the husband of K.S., the minor victim whom Ray prostituted.

27    The first problem with Ray's claim is that the record reflects that the witness

28  actually was subpoenaed by the defense.  *See* Defendant's Motions, Dkt. No. 67, at 8

("The defense has subpoenaed witness Gordon Schaefer.  Schaefer is a member of the United States Marines.  He is also the fiancée of the minor [victim] witness, K.M.").  He was not called to testify in the trial and calling Schaefer to the stand would have been a problematic strategic choice.  As Ray's attorney explained, "this situation is fraught with peril for Schaefer." *Id*. at 9.  The motion explains why Schaefer would likely take the Fifth if called to the stand.  Moreover, it takes little imagination to foresee that the fiancée/husband of K.S. would not want to help the defendant who was accused of prostituting K.S. as a minor.  The larger point is that Ray's claim of ineffective assistance is baseless.  The only witness Ray identifies as a witness he thought should have been subpoenaed is one who was subpoenaed by his attorney.  Disagreeing with counsel's tactical decisions does not constitute ineffective assistance of counsel. *See Wildman v. Johnson*, 26 F.3d 832, 840 (9th Cir. 2001).  On this record, no hearing is warranted and no relief is needed.

At the same time Ray says that his attorney did not go over discovery with him.  There is nothing in the motion or the record to support the argument.  And Ray does not begin to explain how he might have been prejudiced.  Johnson, on the other hand, says specifically in his declaration that he "went over important discovery with Mr. Ray."  Ray's claim is palpably incredible and without support in the record.

### vii.    Claim 7

For Claim 7, Ray claims that Johnson did not tell him of his right to testify in his own defense and that this omission constitutes ineffective assistance of counsel.  Ray says, had he been advised, he would have testified that he thought K.S. (the minor victim) was actually 18 or older.  This last ineffective assistance of counsel claim is also his least serious.  Ray insists that he could have offered (in his words) "credible and exculpatory testimony" about how he thought K.S. looked like an adult.

There are a number of problems with this claim.  One problem is that through four days of trial, Ray did not alert the Court of his alleged desire to testify.  When a

15CR498-BEN

defendant remains silent through trial, he waives his right to testify. *United States v. Pino-Noriega*, 183 F.3d 1089, 1095 (9th Cir. 1999).

Another problem is that Ray was no stranger to the criminal justice system. It is beyond cavil that Ray was aware that in the United States every defendant has the right to testify in his own defense and conversely the right to not testify against himself. To illustrate the point, in Ray's immediately preceding criminal case he signed a plea agreement. He pleaded guilty to the same crime of violating 18 U.S.C. § 1591(a)(1). In the plea agreement, Ray acknowledges giving up "the right, if defendant wished, to testify on defendant's own behalf and present evidence in opposition to the charges. . . ." *See* Binding Plea Agreement, *United States v. Ray*, Case No. CR No. 04-1589(B)-ER (C.D. Cal.) (filed Mar. 22, 2007), Dkt. No. 38, at ¶ 9(f). Consequently, Ray's claim of ignorance is difficult to credit.

A bigger problem with Ray's allegation is that, in his attorney's own declaration, Johnson says that he *did* advise Ray about testifying at trial. Johnson says, "I advised Mr. Ray of his right to testify on his own behalf as I do with all my clients. I did not tell him that it would benefit him to testify, because I did not think it would help him." It is not plausible that Johnson or any other appointed attorney would fail to discuss both a client's right to testify and the right not to testify at trial. Here, Ray's claim of ineffective assistance is palpably incredible.

For the sake of argument, even if Johnson did fail to advise Ray of his right to testify and Ray would have chosen to testify, his claim of prejudice is unconvincing. Ray contends that he would have told the jury that he thought the 16-year-old victim, K.S., whom he managed as a prostitute, was an adult and that she looked older than 18 because she had tattoos and a person must be 18 to get a tattoo. His own attorney doubted the strategy. Johnson's notes from the time reflect his opinion that testifying would be a bad strategy. He noted, "I did not see that he could help his case. I did not view him as believable or sympathetic because of his arrogance and aggression . . . . his arrogance and aggression would not have painted him in the right light to the jurors." Johnson's file

18

notes also warned, "he said he never touched the victim but that she testified that she had sex with him . . . That is a fight that he could never have won [at] trial."

Further, had he actually been able to convince the jury that he believed K.S. was an adult (an improbable task), Ray would also have to convince the jury that he did not have "a reasonable opportunity to observe" K.S.  That would have been an even more difficult story to sell.  Ray's own mother testified at trial that K.S. lived in her house with Ray for several weeks during the offense period.  That would strongly suggest Ray had a reasonable opportunity to observe K.S. and to conclude she was a minor.  That, in turn, would evidence his guilt.  Ray's girlfriend (and co-defendant) also testified.  Jasmine testified that K.S. lived with Ray both in the home of his mother and later when they moved to an apartment in Hemet, California.  Jasmine said she suspected K.S. was a minor because K.S. did not have a driver's license or a birth certificate and Jasmine told Ray about her suspicions.  Jasmine testified that Ray seemed unconcerned.  And although the jury was later told to disregard the testimony, the jury heard that Ray was not interested in knowing the truth about K.S.' age.

Another problem for Ray's claim is that proof of guilt under the statute could be in any of three forms: (1) Ray having actual knowledge that K.S. was less than 18 years old; (2) Ray having a reasonable opportunity to observe K.S. to detect she was less than 18 years old; or (3) Ray using force, threats of force, or coercion upon K.S. to prostitute for him.  On the third theory of proof, K.S. testified about times Ray inflicted physical punishment upon her in order to keep her working as a prostitute.  Ray was a large and imposing man.  As the Court of Appeals observed on Ray's direct appeal, "[s]he . . . testified that when she first told Ray that she wanted to leave, he hit and choked her and would not allow her to go."  This evidence of force and threats of force was sufficient by itself to prove guilt and it was powerful testimony for the jury.  Consequently, even if Ray had taken the witness stand and persuaded the jury that he did not actually know K.S. was a minor, an unlikely scenario, there still existed evidence beyond a reasonable doubt that he controlled K.S.' prostitution through force and fear.  Ultimately, the Court

19

of Appeals decided:  "Ray also challenges his conviction under an alternative theory of liability which required the jury to find that he 'knew' or 'recklessly disregarded' that the victim was under 18, or that he 'had a reasonable opportunity to observe' her.  Because the evidence was sufficient to support the jury's finding that Ray trafficked the victim by force, threats of force, or coercion, any error relating to this alternative theory was harmless."  There was no ineffective assistance of counsel here.

Finally, as would be expected, had Ray taken the stand in his own defense, the prosecutor was ready to pounce on cross-examination.  The prosecutor would have berated him with questions about how he had committed the same crime of managing underage prostitutes in violation of the same statute in 2004.  She would have questioned Ray about his prior use of force and his conviction for aggravated assault on a peace officer.  The prosecutor told the Court in a pre-trial motion in limine hearing, "so, if he chooses to take the stand, we would like to impeach him with the fact that he has got these felony convictions."  *See* Transcript Dkt. No. 155, at 21-22.

Ray's notion today, made in hindsight, that he would have testified and his testimony would have changed the jury's verdict, had he known he was allowed to take the stand, is a bit overly optimistic.  It is not enough to carry the day for the necessary showing of prejudice under *Strickland*.  The record conclusively shows that Ray's attorney was not ineffective, so no hearing is necessary.  *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989).

Ray also claims that the prosecution failed to meet its burden of proof on the subject of whether Ray had a reasonable opportunity to observe the minor victim.  This is not an ineffective assistance of counsel claim, however.  This is a sufficiency-of-the-evidence claim that is not cognizable under § 2255.  *United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010) (evidence-based claim that the overall evidence is insufficient is not cognizable under § 2255); *United States v. Davis*, No. 4:16-CR-06-2, 2021 U.S. Dist. LEXIS 214841, at *14 (M.D. Pa. Nov. 5, 2021) (same).  It is also unpersuasive.  Witnesses testified that the minor victim not only worked daily for Ray but actually lived

20

daily with Ray and Ray's girlfriend for several months.  That evidence was sufficient.  To believe the claim that there was not sufficient proof of Ray's reasonable opportunity to observe requires a little too much imagination.

### viii.   Claim 8

Ray's last contention is that the Court erred in failing to instruct the jury on a reasonable mistake of age defense.  This is an issue that could have been raised on direct appeal.  Because it is raised for the first time here, it is procedurally defaulted.  *United States v. Frady*, 456 U.S. 152, 167-68 (1982) (if defendant does not raise an issue at trial or on direct appeal, to prevail under § 2255 he must show cause excusing his procedural default and actual prejudice).  To show actual prejudice resulting from an erroneous jury instruction, defendants must show that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

Here, Ray argues a failure to instruct for the first time in his § 2255 motion.  As discussed *supra.*, the prosecution proved by three different avenues that Ray had violated § 1591.  A jury instruction on mistake of age, at best, would have undercut one of the avenues of proof.  It would have had no effect on the evidence that Ray used force and threats of force to coerce K.S. to engage in sex acts for money.  Accordingly, Ray cannot show actual prejudice by demonstrating that the jury might have acquitted him if it had been properly instructed.  *See Frady*, 456 U.S. at 167-69; *Kibbe*, 431 U.S. at 154.

## B.  Request for Appointment of Counsel

There is no constitutional right to appointment of counsel for petitioners making a collateral attack on a conviction.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("we have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions"); *Sanchez v. United States*, 50 F.3d 1448, 1456 (9th Cir. 1995) ("there is no constitutional right to counsel at a collateral, post-conviction section 2255 proceeding").  Here, Ray has thoroughly presented his issues in his motion and the accompanying memorandum of law and he has demonstrated a good

understanding of the matters at issue and has the ability to present forcefully and coherently his contentions.

The Court declines to appoint counsel. Appointment of counsel is not necessary for discovery and an evidentiary hearing is not required. The relative complexities of the case are not such that denial of counsel would amount to a denial of due process. The Court has a reliable basis for assessing the validity of the grounds asserted. That Movant believes he may benefit from the assistance of counsel is not enough to appoint one.

## IV.   CONCLUSION

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct sentence is DENIED.

## CERTIFICATE OF APPEALABILITY

The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253. The Court finds that Movant has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find the determination that Movant is not entitled to relief under § 2255 debatable, wrong, or deserving of encouragement to proceed further. Therefore, the Court declines to issue a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS SO ORDERED.**

Date: June 6, 2022

HON. ROGER T. BENITEZ
United States District Judge

15CR498-BEN